*1371 OPINION.
Love:
The petitioner alleges that the respondent erred in computing taxable income for 1923 in that he understated the merchandise inventory owned by it at the beginning of the year by the amount of $103,114.87, thereby overstating income for the year by the same amount. The respondent denies that he committed the error complained of.
In computing the petitioner’s taxable income for 1923 the respondent has used as the opening inventory the amount of the perpetual or book inventory. He used the physical inventory taken on December 31, 1923, as the closing inventory. There is no controversy between the parties with respect to the closing inventory. It is only with respect to the amount of the opening inventory that they disagree. The petitioner contends that since the physical inventory taken at December 31, 1923, was used as the closing inventory for 1923, the opening inventory as shown by its books and reported in its return should be increased to an amount which would represent the actual inventory on hand at the beginning of the year. It contends that the amount necessary to be added to the book inventory at the beginning of 1923 to produce this result is $103,114.87.
In support of its contention that the book inventory at the beginning of 1923 should be increased by $103,114.87 to arrive at the *1372 amount of the actual or correct opening inventory for 1923, the petitioner submitted the testimony of its president. He testified that it was his “ actual conviction ” that the opening inventory as shown by the books was understated by the amount of $103,114.87. The Commissioner determined that the opening inventory for 1923, being the same as the closing inventory for 1922, as made by petitioner, and used by it in its tax return for 1922, was correct.
That determination constitutes a prima facie case. In order to overcome that prima facie cas.e, it devolved on the petitioner to submit satisfactorj’- evidence that it was incorrect.
The “ actual conviction ” of petitioner’s president is not such evidence. On questions of this kind, we may not rely on guesses, surmises, or convictions. Evidence of actual facts is necessary. Were we to indulge in surmises, there might be as many or more surmises suggested against petitioner’s contention as could be suggested in favor of such contention.
As said by us in the case of Universal Steel Co. v. Commissioner, 16 B. T. A. 788 (affirmed by C. C. A., 46 Fed. (2d) 908):
We can not say upon the evidence before us that the inventory of December 31, 1918, as twice returned by the petitioner and apparently as often accepted by the respondent, is clearly incorrect. It is only by indulging, as the petitioner asks us to do, in the probabilities of the matter that there appears to be any force whatever in the petitioner’s contentions. But whatever the probabilities may seem to be, they are outweighed by other considerations of greater importance. The respondent has determined that the inventory as twice returned by the petitioner was correctly valued, both as to manufactured and purchased materials, and the prima facie correctness of that determination can only be overcome by satisfactory proof of error, and not by mere indulgence in the mathematical probabilities of the situation. In W. P. Weaver, 2 B. T. A. 709, we were confronted with a somewhat similar situation, and we refused to disturb the respondent’s determination as to the value of the inventory of the preceding year, holding that “Determinations of the Commissioner involving inventories which have compensating effects upon succeeding taxable years are not to be disturbed except by clear and convincing evidence of error, particularly in cases in which the taxpayer has received the benefit of alleged error in an earlier year barred at the time of appeal to this Board by the statute of limitations.
On this issue the action of the Commissioner is approved.
The remaining issue relates to the deduction to which the petitioner is entitled for bad debts. The parties have stipulated and we have found as a fact that such deduction is to be computed on the basis of a reasonable addition to a reserve for bad debts.
Until December 31, 1923, the petitioner carried on its books two accounts with respect to its bad debts. One of these was the “ reserve for bad debts,” and the other the “ suspense account.” The two accounts appear to have been only parts of a whole and when consoli *1373 dated they represent a reserve for bad debts account. By consolidating them, as was actually done by' the petitioner at the end of 1923, there is disclosed a net reserve for bad debts at January 1,1923, of $4,372.51. (Credit balance in “ reserve for bad debts ” at January 1, 1923, of $58,336.76, less $53,964.25 representing debit balance in “ suspense account ” on same date.) For the years 1921 and 1922 the petitioner credited the “ reserve for bad debts ” account with the amounts of $1,409.74 and $3,000 respectively. For these years the respondent allowed as deductions representing reasonable additions to the reserve for bad debts the amount of $6,580.05 for 1921 and $6,373.13 for 1922. The total of the differences between the amounts allowed as deductions by the respondent and the amounts credited to the “ reserve for bad debts ” account by the petitioner, or $8,543.44, should be added to the amount of $4,372.51 disclosed by a consolidation of the accounts as the reserve for bad debts at January 1, 1923. By doing this the petitioner is found to have had a reserve for bad debts of $12,915.95 at January 1, 1923. Neither the respondent nor the petitioner contends that this amount did not constitute ample provision for bad debts on that date. In fact the petitioner’s president was of the opinion that $4,372.51 constituted a sufficient reserve.
During 1923 the petitioner ascertained- certain accounts receivable amounting to $23,314.76 to be worthless and charged them off directly to profit and loss instead of to the reserve for bad debts. In its income-tax return it took a deduction of $23,314.76 for bad debts actually sustained. While at the end of 1923 the petitioner added to its reserve for bad debts account the amount of $25,000, it did not take any deduction in its return on account of this addition. The respondent in determining the deficiency disallowed the deduction of $23,314.76 taken by the petitioner for actual bad debts charged off, but did allow a deduction of $8,139.08, computed as set out in our findings of fact, as representing a reasonable addition to the petitioner’s reserve for bad debts for 1923.
While the petitioner concedes in its brief that it was in error in taking a deduction in its return for actual bad debts sustained during the year, it contends that it is entitled to a deduction of such an amount as will provide a reasonable reserve at the close of 1923 against bad debts imbedded in its accounts receivable after taking into consideration charges that should properly have been made to the reserve for bad debts on account of debts ascertained to be worthless during the year. The petitioner contends that the amount necessary for this purpose is $48,314.76, or $40,175.68 more than the amount allowed by the respondent. The $48,314.76 contended for by the petitioner is composed of $23,314.76 representing the amount of bad debts charged off in 1923 and disallowed as a deduction by the re *1374 spondent and $25,000 representing the amount of the addition made by the petitioner in 1923 to its reserve for bad debts, but which was not taken by it as a deduction.
While the petitioner may not deduct both bad debts charged off and an addition to a reserve for bad debts, the total of the two amounts may be allowed as a deduction provided it meets the test of reasonableness. Rhode Island Hospital Trust Co. v. Commissioner, 29 Fed. (2d) 339; Harry Kahn et al., 17 B. T. A. 499. Although the petitioner does not contend that it is entitled to deduct both specific bad debts and the addition to the reserve, it contends that it is entitled to a deduction of an amount equal to the total of the two, since such an amount is a reasonable addition to the reserve in order to result in a proper balance at the end of 1923.
As pointed out above, the correct balance in the petitioner’s reserve for bad debts at January 1, 1923, was $12,915.95. Debts ascertained to be worthless in 1923 and properly chargeable against the reserve amounted to $23,314.76. Accordingly, at the end of 1923 the amount of the reserve was not only wiped out, but there was a deficit of $10,398.81. The respondent allowed an addition to the reserve of $8,139.08 for 1923. His allowance plus the amount of the reserve at January 1, 1923; lacks $2,259.73 of being large enough to provide for the bad debts written off during 1923. His allowance would not only leave the reserve without a balance against which to charge doubtful accounts carried in the accounts receivable at the end of the year, but would leave the reserve with a deficit, which would be an anomaly. The amount of the reserve at January 1, 1923, having been sufficient, we think it is clear that the amount allowed by the respondent as an addition to the reserve was too small.
The petitioner’s president who went over the accounts receivable ■at the end of 1923 and determined the amount that should be added to the reserve, testified that he was of the opinion that the deduction of $48,314.76 contended for by the petitioner was a reasonable addition to the reserve for bad debts for the year 1923. However, we are not bound in our decision by his opinion alone, but we must also consider the facts in the case as well as the basis for his opinion. Stewart & Bennett, Inc., 20 B. T. A. 850; Atlantic Bank & Trust Co., 10 B. T. A. 796.
The amount of bad debts charged off in 1923 was greatly in excess of the amount charged off in any of the preceding six years and was more than one-half the total for those years. The addition to the reserve for bad debts contended for was more than three times the total amount taken by the petitioner as a deduction therefor in its returns for 1921 and 1922 and almost twice as much as the total *1375 amount allowed by the respondent for those years. The petitioner, however, was operating under different conditions in 1923 from those of prior years. In that year it became more liberal with credit in order to increase its business. During the year a great many mortgages given by farmers in the area in which the petitioner sold merchandise were foreclosed. This directly affected the collectibility of accounts owing to the petitioner by certain of its farmer debtors. It also affected the financial condition of many small dealers in the country who were customers of the petitioner, as well as the condi-lion of others who owed the petitioner. The evidence indicates that the credit standing of many of the petitioner’s old and formerly reliable customers was wiped out by bankruptcy or by the foreclosure of mortgages during 1923. In view of the changed conditions in 1923 we do not think it would be proper to base a determination of the amount to be added to the reserve for bad debts in 1923 upon the amount of bad debts for prior years or upon the additions made to the reserve in prior years. In our opinion the determination is to be based upon conditions existing in 1923. Rhode Island Hospital Trust Co. v. Commissioner, supra.
It was on the petitioner’s liberality in allowing credit in 1923, together with the above mentioned conditions existing in that year and his knowledge of the financial condition of the petitioner’s debtors, that the petitioner’s president based his opinion as to the amount of $48,314.76 being a reasonable addition to the petitioner’s reserve for bad debts. Another factor, which his testimony indicates was taken into consideration by him, was that the balance of the reserve at January 1, 1923, was $4,372.51 instead of $12,915.95, the correct amount, as heretofore indicated.
From a consideration of the evidence and giving effect to the understatement by $8,543.44 of the reserve for bad debts as carried on the petitioner’s books at January 1, 1923, we think the petitioner is entitled to a deduction of $39,771.32 for 1923 as a reasonable addition to its reserve for bad debts. By adding this amount and the correct reserve at the beginning of the year and subtracting therefrom bad debts of $23,314.76 charged off during the year, the petitioner has a closing balance in the reserve at the end of 1923 of $29,372.51, which we think from the evidence is a reasonable reserve for bad debts at that time.
Since the petitioner is entitled to a deduction of $39,771.32 as a reasonable addition to its reserve for bad debts, and as the respondent allowed a deduction of $8,139.08 in determining the deficiency, a further deduction of $31,632.24 should be made from the petitioner’s income in recomputing the deficiency.

Judgment will be entered imder Rule 50.